DRAFT

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

DAVID CORREIA,

Defendant.

21-cv-____ (___)

## CONSENT OF DEFENDANT DAVID CORREIA

1.      Defendant David Correia ("Defendant") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.      Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. David Correia*, 19-cr.-725-3 (JPO) (S.D.N.Y.), Defendant pleaded guilty to one violation of conspiracy to commit mail fraud [18 U.S.C. § 1349] and one violation of false statements to the federal government [18 U.S.C. § 1001].  In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution that is attached as Exhibit A to this Consent.  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. David Correia*.

3.      Defendant hereby consents to the entry of the Judgment in the form attached hereto (the "Judgment") and incorporated by reference herein, which, among other things permanently restrains and enjoins from violations of Sections 10(b) and 15(a) of the Securities

1

DRAFT

Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5] and Section 17(a) of the Securities Act of 1933

(the "Securities Act") [15 U.S.C. § 77q(a)].

      4.    Defendant agrees that, upon motion of the Commission, the Court shall determine

whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant

to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange

Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount(s) of the disgorgement and/or civil penalty.

The Defendant further understands that, if disgorgement is ordered, Defendant shall pay

prejudgment interest thereon, calculated from March 17, 2016, based on the rate of interest used

by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26

U.S.C. § 6621(a)(2).  Defendant further agrees that in connection with the Commission's motion

for disgorgement and/or civil penalties, and at any hearing held on such a motion: (a) Defendant

will be precluded from arguing that he did not violate the federal securities laws as alleged in the

Complaint; (b) Defendant may not challenge the validity of this Consent or the Judgment;

(c) solely for the purposes of such motion, the allegations of the Complaint shall be accepted as

and deemed true by the Court; and (d) the Court may determine the issues raised in the motion

on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony,

and documentary evidence, without regard to the standards for summary judgment contained in

Rule 56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's

motion for disgorgement and/or civil penalties, the parties may take discovery, including

discovery from appropriate non-parties.

      5.    Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

DRAFT

6.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that he fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

10.     Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

11.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges

DRAFT

that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

12.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil

DRAFT

penalty or other amounts due by Defendant under the Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19). If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules,

DRAFT

provided that the party requesting the testimony reimburses Defendant's travel, lodging, and

subsistence expenses at the then-prevailing U.S. Government per diem rates; and (iv) consents to

personal jurisdiction over Defendant in any United States District Court for purposes of

enforcing any such subpoena.

      15.    Defendant agrees to waive all objections, including but not limited to,

constitutional, timeliness, and procedural objections, to the administrative proceeding that will be

instituted when the Judgment is entered.

      16.    Defendant agrees that the Commission may present the Judgment to the Court for

signature and entry without further notice.

      17.    Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Judgment.

Dated: _1/15/21_                       _____

                                David Correia

    On _January 15_, 2020, _2021_ _David Correia_, a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent.

                           _____
                            Notary Public
                            Commission expires: 8-18-24

SAMANTHA ANN CAVALIERO
MY COMMISSION # HH 033414
EXPIRES: August 18, 2024
Bonded Thru Notary Public Underwriters

# Exhibit A

KATACORPps

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                          19-cr-725-3 (JPO)

 5    DAVID CORREIA,

 6                   Defendant.             Plea

 7    ------------------------------x

 8                                          New York, N.Y.
                                            (via telephone)
 9
                                            October 29, 2020
10                                          10:45 a.m.

11

12    Before:

13                     HON. J. PAUL OETKEN

14                                          District Judge

15                          APPEARANCES

16    AUDREY STRAUSS
           Acting United States Attorney for the
17         Southern District of New York
      BY:  DOUGLAS ZOLKIND
18         NICOLAS LANDSMAN ROOS
           REBEKAH DONALESKI
19
20    GOODWIN PROCTER, LLP
           Attorneys for Defendant
21    BY:  WILLIAM J. HARRINGTON

22    Also Present:  Stephanie McMahon
                     U.S. Probation Officer
23

24

25
```

KATACORPps

1          (Via telephone)

2          (Case called)

3          THE CLERK:  Starting with the government, counsel,

4    please state your name for the record.

5          MR. ZOLKIND:  Good morning, your Honor.  For the

6    government, your Honor, this is Douglas Zolkind, joining by

7    video.  And joining by phone are my colleagues Rebecca

8    Donaleski and Nicolas Roos.

9          THE COURT:  Good morning.

10         MR. HARRINGTON:  Good morning, your Honor.  Bill

11   Harrington, counsel for Mr. Correia.  Mr. Correia is also

12   appearing virtually.  He prefers to go ahead with this

13   proceeding virtually rather than in person, given the current

14   pandemic.

15         THE COURT:  OK.  Thank you.

16         Is there anyone else who wanted to identify themselves

17   for the call?

18         I believe the AT&T line is working, and I'm going to

19   ask my law clerk to send me a message by text to confirm that

20   it is.

21         OK.  It sounds like it is.

22         Good morning, everyone.  I understand that defendant

23   is prepared to change his plea to a plea of guilty to Counts

24   Two and Seven pursuant to a plea agreement with the government.

25   Is that correct, Mr. Harrington?

1           MR. HARRINGTON:  It is, your Honor.

2           THE COURT:  All right.  Before we begin the change of

3    plea hearing, I believe we need to do two things, first of all,

4    address the remote nature of the proceeding and ensure that the

5    defendant waives his right to have this take place in person,

6    and, second, conduct the arraignment on the superseding

7    indictment, which was returned and filed on September 17, 2020.

8    Is that all the housekeeping preliminary matters we need to

9    deal with?

10          MR. ZOLKIND:  I believe so, your Honor.

11          THE COURT:  Mr. Harrington, you agree?

12          MR. HARRINGTON:  Yes, your Honor.

13          THE COURT:  All right.  We're conducting this

14   proceeding by videoconference, and doing so is authorized by

15   the CARES Act, in light of the COVID-19 pandemic and by Chief

16   Judge McMahon's standing order and her finding that plea

17   proceedings cannot be conducted in person without jeopardizing

18   public health as long as the defendant consents.

19          Mr. Harrington, you said you discussed the subject of

20   proceeding by video with Mr. Correia; is that right?

21          MR. HARRINGTON:  I have as to the plea, your Honor,

22   yes.

23          THE COURT:  OK.  And, Mr. Correia, am I saying it

24   right, is Mr. "kor-RAY-ya" or "Korea"?

25          THE DEFENDANT:  Yes, that's fine, Judge.  Either one

 1   is fine.

 2            THE COURT:  OK.  But how do you prefer it?

 3            THE DEFENDANT:  "Korea" generally, but "kor-RAY-ya" is

 4   proper.

 5            THE COURT:  You have the right to have this proceeding

 6   take place in person.  This is the kind of proceeding,

 7   obviously, that would normally take place in person at the

 8   courthouse.  However, under the circumstances, you do have the

 9   right to waive the in-person proceeding and have it take place

10   by video.  Have you talked to your lawyer about that and do you

11   consent to doing it by video?

12            THE DEFENDANT:  I have, your Honor, and I do.

13            THE COURT:  All right.  I find the defendant has

14   consulted with counsel and has voluntarily and knowingly waived

15   his right to an in-person proceeding for purposes of this

16   change of plea hearing, and that he consents to

17   videoconference.

18            I also must make a finding as to whether this

19   proceeding can or cannot be further delayed without serious

20   harm to the interest of justice, and I would just like to ask

21   the lawyers if you would like to address that briefly.

22   Mr. Zolkind, do you have anything to say about that, or

23   Mr. Harrington?

24            MR. ZOLKIND:  Your Honor, we would certainly submit

25   that the proceeding cannot be further delayed without serious

1   harm to the interest of justice, given the defendant's interest

2   in resolving this case, the government's interest in resolving

3   the matter as to him, the fact that there are other defendants

4   pending in the case, and that it would serve their interests

5   and the interests of justice to allow the case to move forward

6   efficiently.

7          THE COURT:  OK.  Mr. Harrington, anything to add on

8   the point?

9          MR. HARRINGTON:  No.  I agree with Mr. Zolkind's

10  representation.

11         THE COURT:  OK.  I agree as well.  And I find that,

12  for those reasons, the proceeding cannot be further delayed

13  without serious harm to the interest of justice, and therefore

14  proceeding by videoconference today is authorized for this

15  hearing.

16         As I mentioned, a superseding indictment was returned

17  by the grand jury in September of this year, and that

18  superseding indictment modified, or reflects certain

19  modifications to certain allegations and charges in the

20  original indictment that was filed, and adds certain additional

21  charges.

22         Mr. Harrington, does your client waive public reading

23  of the superseding indictment for purposes of this arraignment?

24         MR. HARRINGTON:  He does, your Honor.

25         THE COURT:  And Mr. Correia, have you had a sufficient

1    opportunity to fully review the superseding indictment?

2               THE DEFENDANT:  Yes, your Honor, I have.

3               THE COURT:  And have you discussed it with your

4    lawyer?

5               THE DEFENDANT:  Extensively, yes.  Yes, sir.

6               THE COURT:  And do you understand the charges against

7    you?

8               THE DEFENDANT:  I do.

9               THE COURT:  And I have been informed -- normally at

10   this point in an arraignment I would take your plea, which

11   would ordinarily be a not guilty plea, but I have been informed

12   that you wish to plead guilty to Counts Two and Seven of the

13   superseding indictment pursuant to a plea agreement.  Is that

14   correct?

15              THE DEFENDANT:  That is correct, your Honor.

16              THE COURT:  All right.  Before accepting your guilty

17   plea, I'm going to ask you certain questions.  It may seem like

18   a lot of questions, but the reason I ask these questions is to

19   establish that you're pleading guilty because you are guilty of

20   these particular charges and not for some other reason, not

21   because of any inappropriate pressure or anything else.  So if

22   at any point you don't understand my questions or you'd like to

23   take a break to speak further with Mr. Harrington, just let me

24   know.

25              Now, I'm going to ask you to please raise your right

1   hand so that I can place you under oath.

2          (Defendant sworn)

3          THE COURT:  Thank you.  You are now under oath, and

4   that means if you answer any of my questions falsely, your

5   answers could be used against you in a prosecution for perjury.

6   Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  What's your full name?

9          THE DEFENDANT:  David Paul Correia.

10         THE COURT:  And how old are you?

11         THE DEFENDANT:  45 years old.

12         THE COURT:  And how far did you go in school?

13         THE DEFENDANT:  About three quarters of the way

14   through college.

15         THE COURT:  And that was where?  In the United States?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And did you go to high school in the

18   United States?

19         THE DEFENDANT:  I did.

20         THE COURT:  All right.  Have you ever been treated or

21   hospitalized for any mental illness?

22         THE DEFENDANT:  Never.

23         THE COURT:  And have you recently been or are you now

24   under the care of a psychiatrist or a doctor?

25         THE DEFENDANT:  A doctor as a primary care and for

KATACORPps

gastrointestinal issues, but not a psychiatrist.

THE COURT:  And have you ever been hospitalized or treated for addiction to drugs or alcohol?

THE DEFENDANT:  Never.

THE COURT:  And in the past 24 hours, have you taken any drugs or pills or had any alcohol?

THE DEFENDANT:  No, your Honor.

THE COURT:  And is your mind clear today?

THE DEFENDANT:  Yes, it is, your Honor.

THE COURT:  And you understand what's happening in this proceeding?

THE DEFENDANT:  Yes, sir.

THE COURT:  And does either counsel have any doubt as to defendant's competence to plead at this time?
Mr. Harrington?

MR. HARRINGTON:  I don't, your Honor.

THE COURT:  And Mr. Zolkind?

MR. ZOLKIND:  No, your Honor.

THE COURT:  Based on his responses to my questions and his demeanor as I observe it, I do find that the defendant is competent to enter a plea of guilty at this time.

Mr. Correia, have you had a sufficient opportunity to discuss your case with your attorney, including the charges you intend to plead guilty to, any possible defenses, and the consequences of pleading guilty?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And are you satisfied with your attorney's

3    representation of you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  I am now going to explain certain

6    constitutional rights that you have and that you give up when

7    you plead guilty.  Under the Constitution and laws of the

8    United States, you have the right to a speedy and public trial

9    by a jury on the charges contained in the indictment.  Do you

10   understand that?

11         THE DEFENDANT:  Yes, Judge.

12         THE COURT:  And at that trial, you would be presumed

13   innocent and the government would be required to prove you

14   guilty beyond a reasonable doubt before you could be found

15   guilty.  You would not have the burden of proving that you were

16   innocent.  A jury of 12 people would have to agree unanimously,

17   all 12 of them, that you were guilty beyond a reasonable doubt

18   before you could be convicted on these charges.  Do you

19   understand that?

20         THE DEFENDANT:  Yes, Judge.

21         THE COURT:  At that trial and at every stage of your

22   case, you would be entitled to be represented by an attorney

23   and if you could not afford one, one would be appointed to

24   represent you.  Do you understand that?

25         THE DEFENDANT:  Yes, Judge.

KATACORPps

1       THE COURT:  During a trial, the witnesses for the

2   government would have to come to court and testify in your

3   presence, and your lawyer would be able to cross-examine the

4   witnesses for the government, object to evidence offered by the

5   government, and offer evidence and compel witnesses to testify

6   in your defense.  Do you understand that?

7       THE DEFENDANT:  Yes, Judge.

8       THE COURT:  At a trial, although you would have the

9   right to testify if you chose to, you would also have the right

10  not to testify, and no inference or suggestion of guilt could

11  be drawn from the fact that you did not testify if that is what

12  you chose.  Do you understand that?

13      THE DEFENDANT:  Yes, Judge.

14      THE COURT:  If you were convicted at a trial, you

15  would also have the right to appeal that verdict to the Court

16  of Appeals.  Do you understand that?

17      THE DEFENDANT:  Yes, Judge.

18      THE COURT:  Even at this time, as you're entering this

19  plea, you do have the right to change your mind, continue with

20  a not guilty plea, and have a trial on these charges.  Do you

21  understand that?

22      THE DEFENDANT:  Yes, Judge.

23      THE COURT:  If you do plead guilty and I accept your

24  plea, you'll be giving up your right to a trial and the other

25  rights I've just described.  Just to be clear, there will be no

KATACORPps

1   trial, but I will enter a judgment of guilty if I accept your
2   guilty plea, and then that becomes a conviction on these
3   charges, and then I will sentence you later, not today, but
4   only after considering any written submissions by the attorneys
5   in the case, including your attorney, as well as a presentence
6   report that the Probation Department will prepare, and then
7   sentence you after reviewing those documents.  You understand?
8           THE DEFENDANT:  Yes, Judge.
9           THE COURT:  And if you plead guilty you'll have to
10  give up your right not to incriminate yourself, because I will
11  ask you about what you did to satisfy myself that you are in
12  fact guilty of these charges.  Do you understand that?
13          THE DEFENDANT:  Yes, Judge.
14          THE COURT:  OK.  So pursuant to the plea agreement,
15  you're pleading guilty to two counts, Count Two of the
16  superseding indictment, which is false statements to the
17  Federal Election Commission, in violation of 18 United States
18  Code § 1001(a)(2) and 18 U.S. Code § 2, and Count Seven of the
19  superseding indictment, which is conspiracy to commit wire
20  fraud, in violation of 18 United States Code § 1349.
21          Mr. Zolkind, you could please state the elements of
22  those two offenses.
23          MR. ZOLKIND:  Yes, your Honor.  As to Count Two, which
24  charges Correia with false statements in violation of 18 U.S.C.
25  § 1001(a)(3), there are three elements: first, that the

defendant made or used a false writing or document that

contained a statement or entry that was false, fictitious, or

fraudulent; second, that the defendant acted knowingly and

willfully; and, third, that the false statement or entry was

material to a matter within the jurisdiction of a federal

government agency.

        With respect to Count Seven, which charges Mr. Correia

with conspiracy to commit wire fraud in violation of 18 U.S.C.

§ 1349, there are two elements: first, the existence of the

conspiracy, that is, the existence of any agreement or

understanding to commit the unlawful object of the conspiracy;

and, second, the government must prove that the defendant

knowingly became a member of the conspiracy, with intent to

further its illegal purpose -- that is, with the intent to

commit an object of the charged conspiracy, here, wire fraud.

The object of the conspiracy, wire fraud, has four elements:

first, that there was a scheme or artifice to deprive others of

money or property by false or fraudulent pretenses,

representations, or promises; second, that the false or

fraudulent representation or concealment must relate to a

material fact or matter; third, that the defendant knowingly

and willfully devised or participated in a scheme or artifice

to defraud, with knowledge of its fraudulent nature and with a

specific intent to defraud; and, four, that the scheme was

executed by using or causing others to use interstate or

1    foreign wires.

2            THE COURT:  Thank you.  So those are the elements of

3    the two offenses.  If this were going to trial, I would be

4    explaining to the jury that the jury must find each of those

5    elements beyond a reasonable doubt.  Do you understand that,

6    Mr. Correia?

7            THE DEFENDANT:  Yes, Judge.

8            THE COURT:  All right.  I also want to state what the

9    maximum statutory penalties are for these offenses.  Now, this

10   is separate from the guidelines.  The maximum statutory

11   penalties in this case are different from what the sentencing

12   guidelines are.  The sentencing guidelines are the starting

13   point.  And I'll get to that in a minute.

14           With respect to Count Two, however, the maximum

15   penalty under the statute is five years' imprisonment.  There's

16   a maximum fine of $250,000.  There is a $100 special

17   assessment, which is mandatory.  And there is a maximum term of

18   supervised release for three years.

19           And when I say "supervised release," that means that

20   you're subject to monitoring for a period of time after release

21   from any period of imprisonment, essentially like probation,

22   and there are terms and conditions of supervised release that

23   you must comply with during that period, and if you fail to

24   comply with them, you can be returned to prison without a jury

25   trial.

1          And with respect to Count Seven, which is conspiracy

2    to commit wire fraud, there is a maximum term of 20 years'

3    imprisonment.  There's a maximum fine of the greatest of

4    $250,000, or twice the gross pecuniary gain from the offense,

5    or twice the gross pecuniary loss to others from the offense,

6    and a $100 special assessment, and again a maximum term of

7    supervised release for a period of three years.

8          In addition, as part of your plea agreement, you admit

9    to the forfeiture allegation with respect to Count Seven and

10   agree to forfeit to the United States the amount of $43,650,

11   representing proceeds traceable to that offense.  And you agree

12   to make restitution to victims as stated in the plea agreement

13   in the total amount of $2,322,500.  Again, that's $2,322,500.

14          Are you a United States citizen?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  OK.  I also want to explain that if anyone

17   has attempted to predict or promise you or suggest to you what

18   your sentence is going to be, no one can assure you of that,

19   because I am the one who's going to determine your sentence,

20   not now but at the time of sentencing, after reviewing the

21   documents I mentioned.  I'm going to wait until a presentence

22   report is prepared and I've reviewed any written documents,

23   submissions by your lawyer and the government's lawyer, and

24   determine an appropriate sentence for you under all the factors

25   and the applicable statute, including the guidelines but not

1    limited to the sentencing guidelines.  And even if your

2    sentence is different from what you expect or what anyone has

3    told you it might be, you will still be bound by your guilty

4    plea and will not be allowed to withdraw your plea of guilty to

5    these counts.  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Has anyone threatened you or forced you in

8    any way to plead guilty?

9              THE DEFENDANT:  No, your Honor.

10             THE COURT:  And did you enter into a plea agreement

11   with the government?

12             THE DEFENDANT:  I did, your Honor.

13             THE COURT:  I have a copy of an agreement with a cover

14   date of October 27th of this year, and it appears to have a

15   signature on it, as well as Mr. Harrington and Mr. Zolkind.

16   Did you review it fully -- well, first of all, did you sign it?

17             THE DEFENDANT:  I did.

18             THE COURT:  And did you review it fully and discuss it

19   with Mr. Harrington before you signed it?

20             THE DEFENDANT:  I did, your Honor.

21             THE COURT:  And do you feel you understand everything

22   that's in that plea agreement?

23             THE DEFENDANT:  I do, your Honor.

24             THE COURT:  Do you have any separate -- well, other

25   than the stipulation and the preliminary order of forfeiture,

KATACORPps

 1   do you have any separate understanding that's been left out of

 2   that agreement?

 3           THE DEFENDANT:  No.  No, your Honor.

 4           THE COURT:  OK.  Again, I mentioned that the

 5   sentencing guidelines are advisory.  There is no mandatory

 6   minimum statutory sentence in this case.  But the sentencing

 7   guidelines are a benchmark, and legally I am required to

 8   consider them when determining an appropriate sentence.  And

 9   under the plea agreement, there's a stipulated guideline range

10   that is an agreed-upon guideline range between you and the

11   government of 33 months' to 41 months' imprisonment, and a

12   guideline fine range of $15,000 to $150,000 as a fine.  Now,

13   again, that's not binding and your lawyer will be able to argue

14   for a different sentence.  However, that is the starting point.

15   Also, I will make my own calculation of the guidelines, so if I

16   come up with a different guideline range, that stipulated range

17   is not binding on me, but it's binding on the parties.  Do you

18   understand that?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  And although your lawyer will be able to

21   argue for a sentence outside that guideline range, below it

22   presumably, I want to make sure you understand that you're

23   giving up your right to appeal or challenge your sentence under

24   the plea agreement as long as I sentence you within or below

25   that range, that is, 41 months or less in prison.  Do you

KATACORPps

1   understand that?

2        THE DEFENDANT:  Yes, your Honor.

3        THE COURT:  And having gone through this

4   back-and-forth, do you still wish to plead guilty to Counts Two

5   and Seven pursuant to this agreement?

6        THE DEFENDANT:  Yes, your Honor, I do.

7        THE COURT:  And are you pleading guilty voluntarily

8   and of your own free will?

9        THE DEFENDANT:  Yes, your Honor.

10        THE COURT:  Would you please tell me in your own words

11   what you did that makes you believe you are guilty of these

12   charges.

13        THE DEFENDANT:  Sure.  And if I may, I prepared

14   something regarding the first -- second count regarding the

15   FEC.

16        In October of to 18, I swore that a declaration to the

17   FEC was collect, even though it says things that are not

18   correct.  I knew the declaration said things that were probably

19   false, but I did not ask about them at the time.  I just wanted

20   the FEC to end its investigation, which I believed was

21   unwarranted.  I knew that this was wrong at the time I did it.

22

23        THE COURT:  You said you believe or believed it was

24   unwarranted?

25        THE DEFENDANT:  Believed at the time it was

KATACORPps

1    unwarranted.

2              THE COURT:  OK.

3              THE DEFENDANT:  The investigation itself.

4              THE COURT:  OK.  And did the statements that were

5    false, were they things that would have been important,

6    material to the FEC?

7              THE DEFENDANT:  I was under the impression that

8    everything that was being stated in that affidavit was

9    important to the FEC.

10             THE COURT:  OK.  And let me ask Mr. Zolkind and

11   Mr. Harrington if you believe that's a sufficient factual basis

12   for the plea to Count Two.

13             MR. HARRINGTON:  This is Mr. Harrington.  I do, your

14   Honor.

15             MR. ZOLKIND:  And for the government, we agree that

16   it's sufficient as to Count Two, your Honor.

17             THE COURT:  OK.  Thank you.

18             And what about Count Seven, Mr. Correia?

19             THE DEFENDANT:  Yes, Judge.  Between 2012 and 2019, I

20   agreed with another person to give potential investors

21   incorrect information about the financials of a start-up

22   project called Fraud Guarantee.  And this was because I wanted

23   the investors to participate in what I believed was a great

24   project.  I knew this was wrong at the time that it was done.

25             THE COURT:  Did you say you agreed with others to do

1 this?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  And did you know that it was

4 wrong at the time?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Counsel, do you believe there is any

7 additional questioning needed, or do you think that's a

8 sufficient factual basis for the guilty plea to Count Seven?

9          MR. ZOLKIND:  Your Honor, I think it's sufficient.

10 The one additional point that may just be worth confirming is

11 that the defendant knew that the scheme would be carried out

12 through wires such as emails, phone calls, or wire transfers,

13 interstate wires.

14          THE COURT:  OK.  Mr. Correia, did you understand that

15 emails and/or phone calls would be used to carry out the

16 scheme?

17          THE DEFENDANT:  They were in fact used.  I don't know

18 that I understand the question completely, whether I knew prior

19 to.

20          THE COURT:  Well, no.  While it was happening, you

21 understood that you were using emails and phone calls for it?

22          THE DEFENDANT:  I was aware that that was the way I

23 was communicating, absolutely.

24          THE COURT:  OK.  All right.  Anything else,

25 Mr. Zolkind?

1          MR. ZOLKIND:  No, your Honor.

2          THE COURT:  And Mr. Harrington, do you believe there

3     is a sufficient factual basis for the plea?

4          MR. HARRINGTON:  I do, your Honor.

5          THE COURT:  All right.  Is there anything that either

6     party, either counsel would like to raise in terms of

7     additional questioning or additional proffer or additional

8     background you'd like me to highlight before accepting the

9     plea?

10         MR. ZOLKIND:  Well, your Honor, I'd be prepared to

11    offer a proffer on behalf of the government as to what we would

12    prove if the case were to go to trial.

13         THE COURT:  OK.  You can do that.

14         MR. ZOLKIND:  OK.  Your Honor, at trial the government

15    would prove at least the following beyond a reasonable doubt,

16    through witness testimony, emails, bank records, and other

17    evidence, including the defendant's sworn statement to the FEC.

18    So with respect to Count Two, the false statements count, the

19    government would prove the following, at least the following:

20    In or about May of 2018, Lev Parnas and Igor Fruman made a

21    $325,000 contribution to a super PAC called America First

22    Action, Incorporated.  Parnas and Fruman caused the donation to

23    be played in the name of Global Energy Producers, or GEP.  GEP

24    was a company that Parnas and Fruman had recently formed and

25    which Mr. Correia was helping them to get off the ground but

1   which was in the very early days of being developed.  At the
2   time of the donation, GEP had no operations or even any bank
3   account.  The $325,000 donation did not come from any source of
4   funds held by GEP.  Rather, it came from a mortgage that was
5   taken out on a property owned by Fruman, which funds had been
6   transferred to an account held by Parnas and which Parnas then
7   transferred to America First Action.

8          In or about July of 2018, a complaint was filed with
9   the Federal Election Commission, or the FEC, claiming that this
10  donation violated certain provisions of the Federal Election
11  Campaign Act, including the prohibition on so-called "straw
12  donations," or donations made in the name of another person,
13  here, GEP.

14         In or about October 2018, GEP, Parnas, and Fruman
15  submitted a response to the FEC.  Part of that response
16  included an affidavit from David Correia in his capacity as
17  director of operations for GEP.  The affidavit falsely depicted
18  GEP as a well-funded operational energy company, including
19  falsely claiming that GEP was funded with "substantial bona
20  fide capital investment," that the $325,000 donation "was made
21  with GEP funds," and that GEP had spent more than $1 million
22  pursuing "numerous opportunities to expand our operations."
23  The government would prove that Correia knew these statements
24  were false based on his personal involvement in GEP's affairs,
25  including in the lending transaction that provided the funds

1     for the $325 donation.

2              In the affidavit, Mr. Correia also made false

3     statements about his company, Fraud Guarantee, claiming that it

4     "provides various risk management tools for investors"

5     including "both insurance product and mechanisms for conducting

6     pre-investment due diligence."  In fact Fraud Guarantee had no

7     operations and offered no insurance product whatsoever.

8     Correia knew this statement was false because he owned and ran

9     Fraud Guarantee along with Mr. Parnas.

10             The government would further prove that the FEC is a

11    federal agency and that Mr. Correia's false statements were

12    material to a matter within the FEC's jurisdiction.

13             With respect to venue, the government would prove that

14    this affidavit was prepared and submitted by Mr. Correia's

15    counsel in Manhattan.

16             Now, with respect to Count Seven, which is the Fraud

17    Guarantee wire fraud conspiracy, the government would prove at

18    least the following: that in or about late 2012, Mr. Correia

19    and Mr. Parnas started a company known as Fraud Guarantee.  The

20    goal of the company was to provide insurance to protect

21    investors in the event they were defrauded, as well as

22    providing certain other services and tools to protect

23    investors.  By mid 2019, more than six years later, the company

24    had not become operational.  At no point did Fraud Guarantee

25    ever bring insurance products to market.  Nor did it ever have

any customers.

Between 2012 and 2019, Mr. Parnas and Mr. Correia solicited numerous individuals to invest in Fraud Guarantee. At least seven individuals agreed to invest.  Each of the investors paid between approximately $200,000 and $500,000 to consummate their investments.  Mr. Parnas and Mr. Correia induced these victims to invest in Fraud Guarantee based on materially false and misleading claims about the company.  They told these victims that the victims' money would be used exclusively for the legitimate business expenses of Fraud Guarantee.  They said that none of the money would go to Mr. Parnas or Mr. Correia personally, only to the company itself.  This was false.  The majority of investor funds were withdrawn as cash or transferred to personal accounts of Mr. Parnas or Mr. Correia or their family members, and were spent on personal expenditures, such as Mr. Parnas's rent, luxury cars, and retail stores.

Mr. Parnas and Mr. Correia also made false statements about how much money the company had raised overall and about how much money Mr. Parnas had personally invested in the company.  They led victims to believe that the company had raised millions of dollars, including from Mr. Parnas himself, when in fact the company had raised virtually no money, Mr. Parnas had contributed essentially none of his own money.

The government would prove that this scheme was

1   carried out through interstate wires, including emails, phone

2   calls, and wire transfers.  And we would also prove that

3   multiple meetings were held in Manhattan in furtherance of the

4   conspiracy.

5           THE COURT:  OK.  That was a factual proffer of what

6   the government would prove as to these counts as trial.

7   Mr. Harrington, is there any response you would like to make or

8   anything you would like to add, in terms of any -- anything

9   regarding the matter?

10          MR. HARRINGTON:  No.  Well, your Honor, there's one

11  small thing.  It's really more relevant to sentencing, but I

12  just don't want Court to be left with an incorrect impression

13  now.  Mr. Zolkind made a reference to the majority of the funds

14  being withdrawn and used for personal uses.  And as we'll

15  explain at sentencing, Mr. Correia got very little of that

16  money.  And I just don't want there to be an incorrect

17  impression left today that he got a majority of the funds.  The

18  reason why the forfeiture amount is as low as it is is because

19  he got very little money and was actually working on the

20  project.  And so I'm not disputing the overall tenor of what

21  Mr. Zolkind said, but I do think it's worth mentioning that.

22          THE COURT:  OK.  Thank you.

23          Anything you want to add -- OK.  And anything you

24  wanted to add, Mr. Zolkind?

25          MR. ZOLKIND:  No, your Honor.

1              THE COURT:  OK.  Thank you.

2              You mentioned the forfeiture order.  I do have a copy

3       of a preliminary -- consent preliminary order of forfeiture,

4       which, as I mentioned, indicates the defendant agrees to a

5       money judgment in the amount of $43,650.  And I just want to

6       confirm, Mr. Correia, you did sign this document as well?

7              I think you're muted.

8              THE DEFENDANT:  Yes, your Honor, I did.  I'm sorry.

9              THE COURT:  OK.  And Mr. Harrington, you did as well?

10             MR. HARRINGTON:  I did, your Honor.

11             THE COURT:  OK.  I'm signing the consent preliminary

12      order of forfeiture.

13             And with respect to the guilty plea, Mr. Correia,

14      since you acknowledge that you are in fact guilty as charged in

15      Counts Two and Seven of the superseding indictment and since I

16      am satisfied that you know and understand your rights,

17      including your right to go to trial, and that you are aware of

18      the consequences of your plea, including the sentence that may

19      be imposed, I find you are voluntarily pleading guilty to these

20      counts, and I hereby accept your guilty plea and enter a

21      judgment of guilty on those counts.

22             Now, we'll turn to sentencing.  As I mentioned, the

23      Probation Department will be in touch with Mr. Harrington to

24      arrange a meeting for the purposes of the probation officer

25      preparing the presentence report, which has a lot of

1    information, not only about this offense but about you,

2    Mr. Correia, your background, your family, etc.  And I read it

3    very closely before determining an appropriate sentence.  So

4    please make sure that anything you do speak to the probation

5    officer about for that is honest and accurate.

6           In terms of timing, the normal period of timing is

7    about a hundred days for the Probation Department to prepare a

8    draft of the report, for you all to see a copy and note any

9    objections.  So that would put us in February.  I have February

10   12.  But if the parties would prefer a different date, I'm

11   happy to hear alternative dates.

12          MR. ZOLKIND:  February 12th would work for --

13          MR. HARRINGTON:  Your Honor, I thought they could

14   sometimes do the 90 days.  We were thinking maybe the first,

15   like a little earlier in February.  I don't know if that's

16   possible, if you think that's too tight.

17          THE COURT:  I think it probably is possible.

18   Mr. Zolkind, do you have any preference either way?

19          MR. ZOLKIND:  No, your Honor.

20          THE COURT:  So, Mr. Harrington, what were you

21   thinking?  I mean, I'm happy to do it a day that's convenient

22   for you all.

23          MR. HARRINGTON:  We had been thinking the very first

24   week in February, but if your Honor thinks that's too tight,

25   maybe Monday, February 8th.

KATACORPps

 1              THE COURT:  February 8th is fine.

 2              Is that all right, Mr. Correia?

 3              THE DEFENDANT:  That's fine with me, Judge.

 4              THE COURT:  And that's OK, Mr. Zolkind?

 5              MR. ZOLKIND:  Yes, your Honor.

 6              THE COURT:  OK.  Why don't we say February 8, 2021, at

 7      11:30 a.m.  That's all right, Mr. Harrington?

 8              MR. HARRINGTON:  Yes.  Thank you, your Honor.

 9              THE COURT:  All right.  Sentencing is set for February

10      8, 2021, at 11:30 a.m.

11              And any written submissions will be due two weeks

12      before that for the defendant, which is January 25th, and the

13      government's written submission will be due one week before

14      sentencing, which is February 1st.

15              And I assume there's no objection to the present

16      conditions of release on bail continued to the date of

17      sentence, Mr. Zolkind?

18              MR. ZOLKIND:  No objection, your Honor.

19              THE COURT:  All right.  Mr. Correia, all the

20      conditions of your pretrial release will continue to the date

21      of sentencing, so please make sure you continue to comply with

22      those conditions.

23              And is there anything further, from the government?

24              MR. ZOLKIND:  Yes, your Honor.  Two matters.  One, I

25      just wanted to put on the record that the plea agreement

 1   includes a stipulation that the defendant and defense counsel

 2   have signed, as has the government, pursuant to which the

 3   defendant has agreed to withdraw the petition for a writ of

 4   mandamus and motion for a stay.  That we filed, which is

 5   currently pending in the Second Circuit, and so we understand

 6   that he is going to do that directly after this proceeding.  So

 7   I just wanted to put that on the record.

 8          And then the second matter is that we wanted to

 9   request -- and I understand that we have the defendant's

10   consent for this request -- request that the plea agreement be

11   filed under seal to the extent that it will -- because it makes

12   reference to the names of victims.  And we would propose to

13   redact those names and have the public version of the plea

14   agreement have the victim names redacted.

15          THE COURT:  OK.  I don't normally put plea agreements

16   on the docket.  I mean, our district's general practice is not

17   to do that.  This is not a cooperation agreement; however, if

18   we put every plea agreement that wasn't a cooperation agreement

19   on the docket, that would lead to the perverse result of people

20   figuring out who was a cooperator.  So -- but if you have a

21   different view, you can argue for it.

22          MR. ZOLKIND:  No, your Honor.  And we're not proposing

23   to file this on the public docket either.  My understanding is

24   that when requests from the public come in for the plea

25   agreement, for example, a request from members of the press,

KATACORPps

1    our office typically takes the position that those are public

2    documents and so do need to be provided to members of the

3    public.  At least I understand that's the position that we

4    often take.  And so to the extent that requests for the plea

5    agreement come in, in this case, we're requesting to have the

6    public version include redactions in lieu of the victim names.

7              THE COURT:  OK.

8              Mr. Harrington, anything to add on that?

9              MR. HARRINGTON:  No, your Honor.

10             THE COURT:  All right.  That request is granted.

11             MR. ZOLKIND:  Your Honor, I suppose I should make

12   clear, that's our practice when a plea agreement has been

13   marked as a court exhibit during a plea.  I don't recall if the

14   Court did that here, but I know that that is often what happens

15   during a plea proceeding.

16             THE COURT:  OK.  I don't typically mark as a court

17   exhibit -- but if I decide to, it will be redacted, and the

18   original will be filed under seal.

19             MR. ZOLKIND:  OK.  Thank you, your Honor.

20             THE COURT:  OK.  Anything further from the government?

21             MR. ZOLKIND:  Nothing further.

22             THE COURT:  And anything further from defense counsel?

23             MR. HARRINGTON:  No, your Honor.

24             THE COURT:  All right.  Thank you all.

25             This matter is adjourned.

KATACORPps

1           (Adjourned)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25