UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SECURITIES AND EXCHANGE COMMISSION,

        Plaintiff,

  - against -

LEV PARNAS, and
DAVID CORREIA,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ECF Case

No. 21 Civ. 995 (PAC)

# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION TO INTERVENE AND FOR A COMPLETE STAY

                       AUDREY STRAUSS
                       United States Attorney for the
                       Southern District of New York

Rebekah Donaleski
Aline Flodr
Nicolas Roos
Assistant United States Attorneys

    *- Of Counsel -*

## PRELIMINARY STATEMENT

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) to stay this matter in its entirety until the conclusion of the parallel criminal case, *United States v. Lev Parnas, et al.*, S1 19 Cr. 725 (JPO) (the "Criminal Case"). Counsel for Parnas has informed the Government that his client does not object to the Government's request for a full stay. The SEC and Correia take no position on the request for a stay.

The Criminal Case arises from virtually identical facts and circumstances that underlie this action. As a result, a full stay is especially appropriate because any exchange of discovery in the civil case would be asymmetrical and would merely allow Parnas to circumvent the criminal discovery rules and improperly tailor his defense in the Criminal Case. In similar situations, courts in this Circuit and others have often entered a complete stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even over a defendant's objection. *See, e.g.*, *SEC v. Wey*, 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Durante et al.*, 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, 15 Civ. 7175 (KAM), 2016 WL 1122029, at **2-7 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, 15 Civ. 6076 (D.N.J. Jan. 29, 2016); *SEC v. One or More Unknown*

*Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (granting U.S. Attorney's Office request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge); *Harris v. Nassau County et al.*, 2014 U.S. Dist. LEXIS 94554 at *10 (E.D.N.Y. 2014); *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).

For the reasons that follow, the Government respectfully requests that this Court enter an order staying this action until the completion of the Criminal Case.

## FACTUAL BACKGROUND

This case and the parallel Criminal Case arise out of the same underlying events. On October 9, 2019, a superseding indictment (the "Indictment") was unsealed, charging Parnas and Correia with one count of conspiracy to commit wire fraud in relation to a scheme to defraud seven investors in "Fraud Guarantee," Parnas's and Corriea's fledging fraud-reinsurance business, among other charges. *See* 19 Cr. 725, Dkt. 120. On February 4, 2021, the SEC filed a complaint against Parnas and Correia alleging violations of the securities laws related to the same scheme (the "SEC Complaint").

As alleged in the Indictment, between 2012 and 2019, Correia and Parnas defrauded seven different victims out of more than $2.3 million dollars by perpetrating a long-running scheme to defraud investors in a company known as "Fraud Guarantee." Parnas and Correia established Fraud Guarantee in or about late 2012. (Indictment ¶ 27). Between 2012 and 2019, they pitched Fraud Guarantee to potential investors as a company that would provide services to protect investors from fraud, including by offering an insurance product to allow policyholders to recoup their losses in the event they lost money due to fraudulent conduct. (*Id.* ¶¶ 26, 27). To induce victims to invest in Fraud Guarantee, Parnas and Correia made multiple materially false

2

misrepresentations.  (*Id.* ¶ 26).  They told certain victims that their funds, and other investors' funds, would be used solely for legitimate business expenses of Fraud Guarantee, when in fact the funds were largely withdrawn as cash, transferred to personal accounts, and used for various apparently personal expenditures.  (*Id.* ¶ 26).  Parnas and Correia also made materially false statements concerning how much money Parnas had contributed to the company and how much money the company had raised overall.  (*Id.*).  At least seven victims invested in Fraud Guarantee based on these false and misleading representations, with each victim investing hundreds of thousands of dollars, for a total of more than $2 million.  (*Id.*; *see also id.* ¶¶ 28-31 (defrauding of "Victim-1," "Victim-2", and "Victim-3"); *id.* ¶¶ 32-33 (defrauding of "Victim-4"); *id.* ¶¶ 34 (defrauding of "Victim-5"); *id.* ¶¶ 35-36 (defrauding of "Victim-6"); *id.* ¶¶ 37-38 (defrauding of "Victim-7")).

## ARGUMENT

The Government's requests to intervene and for a complete stay of this civil action should be granted.  If this case were to proceed absent a stay, there would be a risk of significant interference with the Criminal Case.  A complete stay would prejudice no party to this civil action, would prevent the circumvention of important statutory limitations on criminal discovery and avoid asymmetrical discovery, and would preserve the Court's resources because many of the issues presented by the civil action will be resolved in the Criminal Case.  Such a stay is appropriate even though Correia and the SEC have reached a settlement, because the civil penalty against Correia remains unresolved.  In any event, the Criminal Case remains ongoing with

respect to Parnas, who has entered a plea of not guilty. Finally, none of the parties to this civil action opposes the Government's requests.

**I.   THE GOVERNMENT SHOULD BE GRANTED PERMISSION TO INTERVENE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." The Government respectfully submits that its application satisfies both of these provisions given the effect this civil proceeding would have on the Criminal Case and the similarity of claims and facts between the parallel proceedings.

As a general rule, courts "have allowed the government to intervene in civil actions — especially when the Government wishes to do so for the limited purpose of moving to stay discovery." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992; *see also SEC v. Credit Bancorp.*, 297 F.3d 127, 130 (2d Cir. 2002). The Government has a "discernible interest in intervening in order to prevent discovery in a civil case from being used to circumvent the more limited scope of discovery in the criminal matter." *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988).

As an initial matter, intervention is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represents the Government's interests with respect to the criminal investigation, prosecution, and enforcement of federal criminal

statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest."). Moreover, as noted above, none of the parties to this action opposes the Government's motion to intervene.

## II.  A COMPLETE STAY OF THIS ACTION IS APPROPRIATE

### A.  Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial. *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted). "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In evaluating whether to grant such a stay, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest.

*See, e.g.*, *Tuzman*, No. 15 Civ. 7057 (AJN), at 2 (quoting *Louis Vuitton*, 676 F.3d at 99). "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice." *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not

5

replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." *Louis Vuitton*, 676 F.3d at 99. The Court's "decision ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case." *Id.* (quotation marks omitted).

**B.  Discussion**

Application of each of these factors here weighs in favor of the stay sought by the Government.

*1.  The Extent of the Overlap*

That the criminal and civil cases involve essentially identical facts and issues weighs heavily in favor of a stay. "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues." *Volmar Distrib.*, 152 F.R.D. at 39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (S.D.N.Y. 1989)); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("Where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter.").

Here, as described above, the Criminal Case and this case both turn on the same fraudulent scheme perpetrated by Parnas and Correia related to "Fraud Guarantee." The cases involve virtually identical facts, evidence, victims and issues, and name the same defendants. As a result, this factor weighs heavily in favor of a stay. *See, e.g., Shkreli*, 2016 WL 1122029, at *4; *Tuzman*, 15 Civ. 7057 (AJN), at 3.

### 2. The Status of the Criminal Case

The return of an indictment in the Criminal Case is also a factor that weighs in favor of a stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment." *Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted). Indeed, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ("A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved."). Parnas and Correia have been indicted, arrested, and have received extensive Rule 16 discovery, and Correia has been sentenced in the Criminal Case. Moreover, extensive pretrial motions have been filed and fully briefed. Trial with respect to Parnas and his co-defendants has been scheduled for October 2021. The steady forward progress of the Criminal Case and relatively advanced posture strongly favors a stay. *See Tuzman*, No. 15 Civ. 7057 (AJN), at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously).

### 3. The Potential Prejudice to the Parties

Given that neither the SEC nor the defendants oppose a full stay, there is no discernable prejudice to any parties. Indeed, with respect to the defendants, granting a stay of the civil case to permit the Criminal Case to proceed to its conclusion would benefit Parnas (if not Correia, who

has been sentenced), because granting a stay of the civil case would (for now) obviate forcing them to make the choice between being prejudiced in the civil case by the assertion of their respective Fifth Amendment rights or being prejudiced in the criminal case if they waived those rights.

### 4. The Interests of the Court

Considerations of judicial economy also weigh in favor of granting a stay. Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action. *Cf. SEC v. Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."); *Global Indus.*, 2012 WL 5505738, at *4 ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *LaBianca*, 801 F. Supp. at 1010-11 (recognizing judicial economy as a factor to be considered). Because the Criminal Case's outcome will likely affect the conduct, scope, and potential resolution of the civil proceeding, thereby streamlining issues in this matter and avoiding duplication of effort and judicial resources, this factor favors the Government's application.

### 5. The Public Interest

The Government and the public have an important interest in ensuring that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery — restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be

utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *Nicholas*, 569 F. Supp. 2d at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

In *Tuzman*, Judge Nathan outlined three principal Government interests justifying a stay of discovery of civil proceedings while parallel criminal proceedings are pending:

> First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through [civil] discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), at 3-4 (internal citations and quotations omitted). Based on these concerns, judges in this District have frequently granted Government requests to limit discovery in a parallel civil action in order to prevent the civil discovery rules from being misused as a device for improperly obtaining discovery in the criminal proceeding. *See, e.g.*, *Tuzman*, No. 15 Civ. 7057 (AJN) (granting stay sought by Government); *SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328

9

(LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial.'") (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)).

Indeed, the rationale underlying a stay is even stronger in an indicted matter, given that a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very discovery process he might otherwise affirmatively benefit from.  *See, e.g.*, *SEC v. Chakrapani*, 2010 WL 2605819 (S.D.N.Y. June 29, 2010) (inviting the Government to renew its motion to stay discovery if the defendant intends to invoke the Fifth Amendment if noticed for a deposition); *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants").  A denial of the Government's requested stay would therefore result in asymmetrical discovery, pursuant to which Parnas would be able to obtain statements from relevant witnesses and victims through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the SEC, while the SEC would be unable to use any of these discovery mechanisms to obtain information from Parnas because of any assertion of his Fifth Amendment rights.  Such a result would be contrary to the criminal discovery rules that

govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination), and would be particularly inappropriate here given that, as noted Parnas has no objection to the requested say.

As such, and because the defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

## CONCLUSION

For these reasons, the Government respectfully requests that its application to intervene and for a complete stay of this matter be granted. A proposed stay order is attached as Exhibit 1.

Dated:   New York, New York
        March 2, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

By:   /s/ Rebekah Donaleski
Rebekah Donaleski
Aline Flodr
Nicolas Roos
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2423